## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL ACTION** |
| | : | **No. 12-cr-230-3** |
| v. | : | |
| | : | |
| HIGINIO CASTILLO | : | |
| | : | |

## MEMORANDUM

**KENNEY, J.**                                                    **FEBRUARY 5, 2024**

Defendant Higinio Castillo brings this *pro se* Motion for Reduction in Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) of the Federal Sentencing Guidelines. ECF No. 515. Mr. Castillo asserts that he is entitled to a reduction of sentence because (1) the COVID-19 pandemic created harsher than usual conditions for confinement; (2) his sentence qualifies for reduction under the "unusually long sentences" and/or "other reasons" categories of Amendment 814 to the Sentencing Guidelines; and (3) he has been rehabilitated. *Id.*

The Government filed a Response in Opposition (ECF No. 517) and the Federal Community Defender Office declined to file a Motion for Reduction of Sentence on behalf of Mr. Castillo.[1] As explained below, the Court will deny Mr. Castillo's motion because he does not present "extraordinary and compelling reasons" allowing consideration for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and Amendment 814. An appropriate Order will follow.

---

[1]    The Honorable Chief Judge Juan R. Sánchez appointed the Federal Community Defender Office by way of Standing Administrative Order to represent all previously sentenced defendants in this District who are potentially eligible for a motion for reduction in sentence pursuant to 18 U.S.C. §3582(c)(1)(A)(i), in light of the November 1, 2023, Amendments to the Federal Sentencing Guidelines for the limited purpose of assessing eligibility.

I.      **BACKGROUND**

Mr. Castillo and his brother, Manuel Castillo, directed the Castillo Drug Smuggling Organization (CDSO), which smuggled heroin and cocaine from the Dominican Republic to the United States. Presentence Investigation Report (PSR) ¶ 39.

Mr. Castillo and the CDSO recruited couriers to smuggle drugs from the Dominican Republic into the United States, for distribution in Philadelphia and elsewhere. *Id*. ¶ 41. Couriers smuggled pellets of drugs inside their bodies, either by swallowing the pellets or inserting them into a body cavity, or by transporting drugs in their luggage. *Id*. ¶ 42. The CDSO arranged and paid for the couriers' travel to and from the Dominican Republic. *Id.* ¶ 44. The couriers were told they could drink and party during their time in the Dominican Republic and would work on the last day. *Id.* ¶ 41. Upon the couriers' return to the United States, a CDSO member transported the couriers from the airport to a safehouse to expel the pellets. *Id*. ¶ 45. Couriers earned an average of $100 per pellet that was transported. *Id*. ¶ 42. The CDSO enforced its hold on couriers and prevented theft of drugs through threats and intimidation. ECF No. 31 ¶ 8.

Mr. Castillo also engaged in two kidnapping incidences. First, in August 2011, a CDSO courier was stopped at Philadelphia International Airport and his contraband seized. PSR ¶¶ 91, 94. The CDSO suspected that the courier had stolen the confiscated drugs. *Id*. ¶¶ 95, 170. Mr. Castillo and his CDSO associates kidnapped the courier, blindfolded him, tied him up, beat him, and struck him with a firearm while interrogating him. *Id*. ¶¶ 97, 170. One of Mr. Castillo's associates fired a gun out the window to scare the courier. *Id*. ¶ 190.

Second, in October 2011, another courier was detained at Newark International Airport and her contraband seized. *Id*. ¶¶ 121-22. Mr. Castillo thought the courier had stolen the confiscated heroin and went to the courier's home. *Id*. ¶¶ 123-24. He demanded the money for the

heroin and did not believe the courier when she told him she had been arrested. *Id*. ¶ 124. The next day, Mr. Castillo went to the home of the courier's babysitter and attempted to take the courier's child. *Id*. ¶ 125.

Mr. Castillo was arrested in March 2012 and pled guilty to thirteen charges in the Second Superseding Indictment. ECF No. 84. His charges included two drug conspiracy charges; four drug trafficking charges; four drug possession with intent to distribute charges; and two kidnapping charges. *Id*.; *see also* PSR at 1-2. He was also charged with one count of discharging a firearm in relation to drug trafficking and violent crime, in violation of 19 U.S.C. § 924(c). ECF No. 84.

The statutory sentencing range for the crimes to which Mr. Castillo pled guilty was 240 months (twenty years) to life. The drug conspiracy counts each bore a minimum of ten years imprisonment and up to life imprisonment. *See* 21 U.S.C. §§ 963 and 960(a); 21 U.S.C. §§ 846 and 841(b)(1)(A). The firearms charge carried a mandatory minimum sentence of ten years (120 months) imprisonment, which was required by statute to be served consecutively to any other sentence. *See* 18 U.S.C. § 924(c). Accordingly, the mandatory minimum sentence was twenty years imprisonment. PSR ¶ 235.

Castillo's total offense level was 39. PSR ¶ 255; *see also* ECF No. 517 at 3. He had no prior criminal history and was thus assigned a criminal history I category. PSR ¶¶ 207-13, 255. The Presentence Investigation Report determined a sentencing guideline range for the drug and kidnapping charges of 262 to 327 months, plus a mandatory minimum sentence of ten years (120 months) for discharging a firearm in furtherance of a crime, for a total advisory range of 382 to 447 months. PSR ¶ 255. At Mr. Castillo's Sentencing Hearing on June 15, 2015, the Court imposed the statutory minimum sentence of 20 years (240 years). ECF No. 436.

Castillo is now 35 years old and is serving his sentence at FCI Danbury, with a minimum release date of April 3, 2029. ECF No. 517 at 3. He filed his motion for compassionate release on December 4, 2023. ECF No. 515. The Government filed its response in opposition on December 8, 2023. ECF No. 517.

## II.   <u>LEGAL STANDARD</u>

Castillo moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), asserting that he is entitled to compassionate release because (1) the COVID-19 pandemic created harsher than usual conditions for confinement; (2) his sentence qualifies for reduction under the revised "unusually long sentences" and/or "other reasons" criteria of Amendment 814; and (3) he has been rehabilitated. ECF No. 515.

As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) authorizes defendants to file a motion for compassionate relief after exhausting the Bureau of Prisons' administrative processes.[2] A court may grant a motion for a sentence reduction if the court determines that (1) "extraordinary and compelling reasons" warrant the reduction; (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the reduction is supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). The "applicable policy statement[]" refers to U.S.S.G. § 1B1.13, which defines what should be considered "extraordinary and compelling reasons" for sentence reduction under compassionate release.

---

[2]    It is unclear to what extent Mr. Castillo exhausted the BOP's administrative processes prior to filing his present motion. However, the Court will assume that Mr. Castillo has satisfied the administrative exhaustion requirement sent forth in 18 U.S.C. § 3582(c)(1)(A).

One year after Congress passed the First Step Act, however, the U.S. Sentencing Commission lost its quorum to amend the compassionate release policy statement (USSG §1B1.13) to reflect the First Step Act's provision that a defendant was now authorized to file their own motion for compassionate release.[3] Courts, including the Third Circuit, thus held that the Commission's policy statement regarding defendant-filed motions for sentence reduction under compassionate release was advisory, not binding. *Andrews*, 12 F.4th 255 at 259.

This changed in April 2023, when the Sentencing Commission promulgated new amendments to the Sentencing Guidelines.[4] Amendment 814 to the Sentencing Guidelines now revises U.S.S.G. § 1B1.13 and makes the Commission's compassionate release policy statement binding. Under Amendment 814, effective November 1, 2023, a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A). Amendment 814 also expands and modifies the categories of "extraordinary and compelling reasons" that may warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), as follows: (1) additional "Medical Circumstances" subcategories; (2) modified Family Circumstances category; (3) new "Victim of Abuse" category; (4) modified "Other Reasons" category; and (5) new "Unusually Long Sentence" category. U.S.S.G. § 1B1.13(b) (Nov. 1, 2023).

Only if a defendant's circumstances qualify as "extraordinary and compelling" will the court look to Section 3553(a) factors to determine whether, at the court's discretion, a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[3] *See* United States Sentencing Commission, *2023 Amendments in Brief*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Jan. 19, 2024).

[4] The Commission regained its voting quorum in 2022. *See* United States Commission, *News Release, August 5, 2022*, https://www.ussc.gov/about/news/press-releases/august-5-2022#:~:text=The%20US%20Senate%20has%20confirmed%20a%20group%20of,the%20first%20time%20in%20more%20than%20three%20years (last visited February 3, 2024).

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

The defendant bears the burden of proving by a preponderance of the evidence that the requested relief is warranted. *United States v. Jeffries*, 2021 WL 2000555, at *7 (W.D. Pa. May 19, 2021) (citations omitted).

## III. DISCUSSION

The Court adopts the government's position that no reduction in Mr. Castillo's sentence is permitted because he has failed to satisfy his burden of proving "extraordinary and compelling reasons" for compassionate release under 18 U.S.C. § 3582(c)(1)(A). As noted, Mr. Castillo asserts that he is entitled to compassionate release because (1) the COVID-19 pandemic created harsher than usual conditions of confinement; (2) his sentence qualifies for reduction under the revised "other reasons" and/or new "unusually long sentences" categories of Amendment 814; and (3) he has been rehabilitated. The Court will address each of Mr. Castillo's arguments for compassionate release in turn.

### A. Extraordinary and Compelling Reasons

#### 1. Harsh Prison Conditions During the COVID-19 Pandemic

Mr. Castillo seeks compassionate release because the impact of COVID-19 on prisoners was extremely hard and created harsher than usual conditions of confinement. ECF No. 515 at 2. Mr. Castillo details how the BOP engaged in lockdowns, suspension of programs, and curtail of

visits to stop the spread of the virus, which led to increased prisoner isolation and fewer programming opportunities, and significantly for Mr. Castillo, limited opportunities to pursue rehabilitative goals. *Id*. Accordingly, Mr. Castillo contends that the Court can consider these conditions of confinement as "extraordinary and compelling reasons" to reduce his sentence. *Id*.

These conditions faced by Mr. Castillo, however, do not give rise to "extraordinary and compelling reasons" for sentence reduction under compassionate release. Mr. Castillo does not show how changed prison conditions during the pandemic uniquely impacted him, particularly as the BOP sought to contain the spread of the virus across the prison population. *See* ECF No. 517 at 4.

Further, the Third Circuit has consistently denied pandemic-based claims for relief, especially where concerns regarding the pandemic were generalized and therefore not specific to the defendant. In *United States v. Robinson*, 2022 WL 11005332, at \*1 (3d Cir. 2022), for example, a Third Circuit panel stated that "[Defendant] did not point to any health conditions placing him at a higher risk of serious illness from COVID-19, nor did he describe any circumstances setting him apart from other incarcerated individuals. [Defendant]'s generalized concerns are insufficient to constitute extraordinary and compelling reasons." *See also United States v. Brunson*, 2022 WL 3756198, at \*5 (E.D. Pa. Aug. 30, 2022) (general concerns over the pandemic and its direct and indirect consequences do not warrant an extraordinary and compelling reason for release); *United States v. Gupton*, 2022 WL 3448233, at \*2 (E.D. Pa. Aug. 16, 2022) (harsh conditions of confinement during the pandemic apply to all inmates and do not constitute "extraordinary or compelling circumstances"); *United States v. Hernandez*, 2022 WL 910091, \*5-6 (E.D. Pa. Mar. 28, 2022) (prison conditions during the pandemic do not present grounds for compassionate release absent a showing of unique harm to the petitioner).

In sum, Mr. Castillo's claim for compassionate release based on conditions in the prison during the pandemic do not constitute an "extraordinary and compelling reason" to warrant a reduction in his sentence.

### 2. "Unusually Long Sentences" and/or "Other Reasons" and/or Criteria of Amendment 814 to § 1B1.13

Mr. Castillo next asserts that his sentence qualifies for reduction under Amendment 814, effective November 1, 2023, which revises the compassionate release policy statement (§ 1B1.13) by adding and modifying categories of "extraordinary and compelling reasons" that may warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). First, Mr. Castillo asserts that the new "Unusually Long Sentence" category, as follows, warrants a sentence reduction:

> (6) UNUSUALLY LONG SENTENCE. – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (Nov. 1. 2023).

This category does not apply to Mr. Castillo because, as he admits, there has been no change in sentencing statutes applicable to his case. ECF No. 515 at 5. The mandatory minimum sentence of 10 years (120 months) for discharging a firearm in furtherance of a crime has not changed since Mr. Castillo's sentencing in 2015. Nor has the far higher guideline range of 262 to 327 months for the drug and kidnapping charges changed. Mr. Castillo's current sentence of the mandatory minimum term of 20 years thus remains applicable. Accordingly, Amendment 814

provides no legal basis for reducing Mr. Castillo's sentence under the "unusually long sentence" category of "extraordinary and compelling reasons" for compassionate release.[5]

Mr. Castillo next asserts that the modified "other reasons" category, as follows, warrants a sentence reduction:

> (5) Other Reasons – the defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) are similar in gravity to those described in paragraphs (1) through (4).

§ 1B1.13(b)(5) (Nov. 1, 2023)

Here, Mr. Castillo does not present any specific circumstances other than harsh prison conditions during the pandemic and his efforts towards rehabilitation that would warrant compassionate release for "other reasons." Accordingly, Amendment 814 provides no legal basis for reducing Mr. Castillo's sentence under the "other reasons" category of "extraordinary and compelling reasons" for compassionate release.

### 3. Rehabilitation

Finally, Mr. Castillo asserts that he is rehabilitated and poses no danger to society. For example, Mr. Castillo has earned his GED and completed numerous educational courses while incarcerated. ECF No. 515 at 3-4. Further, he states that he has become a better father and is supported by his family. *Id*. at 4. While the Court commends Mr. Castillo's work towards rehabilitation, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t). Accordingly, because the other

---

[5]    The Court acknowledges the government's position that the "unusually long sentence" provision in Amendment 814 is not effective because it conflicts with controlling statutes and therefore exceeds the authority of the Sentencing Commission to permit reduction of a final sentence. ECF No. 517 at 6. However, as the government notes, this issue does not arise here because Mr. Castillo does not benefit from the plain terms of the provision. *Id*.

reasons for compassionate release asserted by Mr. Castillo are not extraordinary and compelling, rehabilitation alone will not suffice to warrant a reduction in Mr. Castillo's sentence.

### B. Section 3553(a) Factors

Even if the Court were to find that Mr. Castillo's reasons for compassionate release were "extraordinary and compelling," Mr. Castillo's motion would not succeed based on consideration of the 18 U.S.C. § 3553(a) factors.

Aside from Mr. Castillo's notable efforts towards rehabilitation, the facts of the case remain stark. Mr. Castillo ran a lucrative and extensive international drug smuggling operation and imported and distributed 9.6 kilograms of heroin and cocaine over a period of 18 months. PSR ¶ 178. He was indicted on thirteen counts that included drug trafficking, kidnapping, and firearms charges. ECF No. 84. Accordingly, his sentencing guideline range was 382 to 447 months (~ 32 to 37 years). PSR ¶ 255. Nevertheless, this Court departed significantly downward from the guideline range to sentence Mr. Castillo to the statutory minimum term of 20 years, "the least harsh sentence . . . without [] violating the law." ECF No. 469 (Sentencing Transcript) at 44:5-6.

In considering the Section 3553(a) factors, the Court does not find that further reducing Mr. Castillo's sentence would appropriately reflect the seriousness of his offenses, promote respect for the law, provide just punishment for his offenses, and afford adequate deterrence. Thus, even if this Court were to find that Mr. Castillo's reasons for compassionate release were "extraordinary and compelling," the Section 3553(a) factors do not support granting Mr. Castillo's Motion for Compassionate Release.

### IV.    CONCLUSION

Mr. Castillo has not presented "extraordinary and compelling reasons" to reduce his sentence under compassionate release, as required by 18 U.S.C. § 3582(c)(1)(A) and Amendment

814 to the U.S. Sentencing Guidelines. The Court therefore denies Mr. Castillo's Motion for

Reduction in Sentence. An appropriate order will follow.


**DATED:**      **2/5/2024**                                    **BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**